UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| Merch Traffic, LLC,<br><br>  *Plaintiff*,<br><br>  v.<br><br>JOHN DOES 1-100, JANE DOES 1-100, and XYZ COMPANY,<br><br>  *Defendants*. | Civil Action No. 23-04017(MEF)(JSA)<br><br>**OPINION**<br><br>**SEALED** |

The Plaintiff has rights in certain trademarks, and alleges these will appear on merchandise sold by unauthorized "bootleggers" at two upcoming concerts.

The Plaintiff applies for a seizure order as to the merchandise. This is granted.

The Plaintiff also applies for a temporary restraining order as to the bootlegger-defendants, and others. This is denied.

\*   \*   \*

On July 27, 2023, the Plaintiff filed a complaint, as well as an Ex Parte Application for a Temporary Restraining Order, A Seizure Order, and an Order to Show Cause Why a Preliminary Injunction and Seizure Order should Not Issue. The application attached a proposed order.

The Court reviewed the application and proposed order, and convened an on-the-record conference with the Plaintiff. During the conference, the Court indicated certain areas for possible follow-up. In light of these, the Plaintiff filed various supplemental materials, on August 1, 2023.

The application, along with the supplemental materials, is now before the Court.

The application seeks, as noted, a seizure order and a temporary

1

restraining order. These are taken up below, each in turn.[1]

I. **Seizure Order**

As noted, the Plaintiff first applies for a seizure order under Title 15, United States Code, Section 1116(d). See 15 U.S.C. § 1116(d). This would allow the Plaintiff to seize the merchandise that bears the relevant trademarks and that the Defendants will be selling without permission at the upcoming concerts.

A Court "may," 15 U.S.C. § 1116(d), issue a seizure order if it concludes that each of nine criteria are met.

First, the seizure order applicant must provide adequate security. See 15 U.S.C. § 1116(d)(4)(A); Elec. Lab'y Supply Co. v. Cullen, 977 F.2d 798, 802-803 (3d Cir. 1992).

This will be satisfied upon the Plaintiff's posting of the amount specified in the seizure order the Court will today issue.

Second,[2] the Court must find that "an order other than an ex parte seizure order is not adequate to achieve the purposes of section 1114 of this title." 15 U.S.C. § 1116(d)(4)(B)(i);

---

[1] Two preliminary things. First, temporary restraining orders are a type of injunction, and the other common sorts of injunctions (preliminary and permanent) are not before the Court at the moment. Accordingly, for simplicity's sake, the Plaintiff's request for a temporary restraining order is referred to here as a request for an injunction. Second, Federal Rule of Civil Procedure 65(b)(1)(B) sets standards that must generally be met before the Court can enter injunctive relief on an ex parte basis, as the Plaintiff requests here. See generally Vuitton v. White, 945 F.2d 569, 572-73 (3d. Cir. 1991); see also Rovio Ent. Ltd. v. Royal Plush Toys, Inc., 907 F. Supp. 2d 1086, 1089, 1093-94 (N.D. Cal. 2012). These standards have been satisfied, largely for the reasons stated by the Plaintiff. See First Holt Declaration ¶¶ 12, 17, 19; Second Holt Declaration ¶¶ 5-10; Burns Certificate ¶¶ 8, 10-11, 13; Memorandum at 14-15; Supplemental Memorandum at 1-2.

[2] The Court must find that it "clearly appears from specific facts" that each of criteria two through eight are met. 15 U.S.C. § 1116(d)(4)(B).

2

Vuitton, 945 F.2d 569, 575, n.5.

The Court so finds.

The Plaintiff's Director of Business and Legal Affairs has overseen the procurement of seizure orders for approximately 400 different concerts throughout the United States. See Second Holt Declaration ¶ 3. The Director's declarations make it clear that the conduct of concert bootleggers, such as the Defendants here, cannot be addressed by orders other than an ex parte seizure order. Such other orders, like a temporary restraining order, must be served on the defendant before any action can be taken. But the Director's long and consistent experience with the modus operandi of concert bootleggers establishes that they cannot be readily found so as to be served[3] --- and if they are served, they take steps to thwart follow-on action, like destroying evidence[4] and declining to participate in judicial proceedings.[5]

This is sufficiently persuasive, and it is consistent with observations the Court of Appeals has made. See Lorillard Tobacco Co. v. Bisan Food Corp., 377 F.3d 313, 320-21 (3d Cir. 2004).

Third, the Court must find "the applicant has not publicized the requested seizure." 15 U.S.C. § 1116(d)(4)(B)(ii); Vuitton, 945 F.2d at 575, n.5.

The Court finds the Plaintiff has not done so. See Burns

---

[3] See Second Holt Declaration ¶ 5 (concert bootleggers lack a "fixed business location or even a possibly traceable website," and physically carry merchandise such that they "are able to escape quickly when confronted") id. ¶ 8 (concert bootleggers often run when approached by people seeking to serve orders); id. ¶ 7 (concert bootleggers take steps to avoid identification, such as not using their personal cars at concerts); id. ¶ 9 (concert bootleggers "refuse to provide identification or their real names or addresses for the proofs of service"); see also id. ¶¶ 6, 12, and Part II.B below.

[4] See First Holt Declaration ¶ 17; accord Burns Certificate ¶ 8; see also Part II.B below.

[5] See First Holt Declaration ¶ 20 (stating, among other things, that in the Director's long experience no concert bootlegger has ever appeared at a relevant hearing); see also Part II.B below.

3

Certificate ¶ 21.

Fourth, the Court must find "the applicant is likely to succeed in showing that the person against whom seizure would be ordered used a counterfeit mark in connection with the sale, offering for sale, or distribution of goods or services." 15 U.S.C. § 1116(d)(4)(B)(iii); Lorillard Tobacco Co., 377 F.3d at 316, n.1.[6]

The Court so finds.

The musical group that will be having the two upcoming concerts has obtained various trademarks, see First Holt Declaration ¶ 5, Ex. C, and the Plaintiff has the "exclusive right" to use those trademarks on the group's tour. See id. ¶ 2; Burns Certificate ¶ 5. The trademarks are used on merchandise like T-shirts, posters, and jewelry. See First Holt Declaration ¶ 2, Ex. C.

The group was formed more than forty years ago, see First Holt Declaration ¶ 4, and "on every one of the [g]roup's prior tours . . . [b]ootleggers" have appeared to sell trademark-infringing merchandise. Id. ¶ 9.

This is overwhelmingly likely to occur at the group's two upcoming shows. Why? First, past can be prologue, and especially on a record this long and uniform. Second, bootleggers are ubiquitous at "tours by performers of the caliber and following of [the musical group in question]." Id. ¶ 9. And third, the upcoming shows are ripe for bootlegging. The relevant trademarks are readily available online, see id. ¶ 10, and can therefore be copied. And the upcoming shows will be sold out or nearly so, see id. ¶ 11, and this creates a strong financial incentive for bootleggers.

Fifth, the Court must find "an immediate and irreparable injury will occur if [an ex parte] seizure is not ordered." 15 U.S.C. § 1116(d)(4)(B)(iv); Vuitton, 945 F.2d at 575, n.5.

The Court so finds.

The Plaintiff has submitted persuasive proof on this score. Compare, e.g., First Holt Declaration ¶ 14 (sale of counterfeit merchandise bearing infringing trademarks deceives and disappoints fans, and dissipates goodwill), with Vuitton, 945 F.2d at 576 (holding that reputational harm, including

---

[6] "Counterfeit mark" gets the definition at 15 U.S.C. § 1116(d)(1)(B).

4

likelihood of confusion, qualifies as irreparable harm).

<u>Sixth</u>, the Court must find "the matter to be seized will be located at the place identified in the application." 15 U.S.C. § 1116(d)(4)(B)(v); <u>Lorillard Tobacco Co.</u>, 377 F.3d at 316, n.1.

Here, the Court so finds.

The "place identified in the application" is the venue for the musical group's two upcoming shows, <u>see</u> First Holt Declaration ¶ 1, Exhibit A, and as explained above, it is established that bootleggers will sell unauthorized merchandise there.

<u>Seventh</u>, the Court must find "the harm to the applicant of denying the application outweighs the harm to the legitimate interests of the person against whom seizure would be ordered[.]" 15 U.S.C. § 1116(d)(4)(B)(vi); <u>Elec. Lab'y Supply Co.</u>, 977 F.2d at 802-803.

The Court so finds.

The Plaintiff faces financial losses. <u>See</u> Burns Certificate ¶¶ 10-11. And there is nothing on the other side of the ledger. The Defendants can have no "legitimate interests," 15 U.S.C. § 1116(d)(4)(B)(vi), in breaking the law by infringing trademarks.

<u>Eighth</u>, the Court must find "the person against whom seizure would be ordered, or persons acting in concert with such person, would destroy, move, hide, or otherwise make such matter inaccessible to the court, if the applicant were to proceed on notice to such person." 15 U.S.C. § 1116(d)(4)(B)(vii); <u>Lorillard Tobacco Co.</u>, 377 F.3d at 316, n.1.

Here, the Court so finds, essentially for the reasons laid out above under the second criteria.

<u>Ninth</u>, the applicant must provide reasonable notice to the United States Attorney's Office for this District. <u>See</u> 15 U.S.C. § 1116(d)(2).

Here, the Plaintiff timely notified the United States Attorney in writing. <u>See</u> Burns Certificate ¶ 21.

*   *   *

In sum: the Plaintiff has met the standard for a seizure order under Title 15, United States Code, Section 1116(d). <u>See</u> generally <u>Am. Airlines, Inc. v. Individuals Identified in Exhibit A</u>, 2022 WL 4594177, at *4 (S.D. Fla. Aug. 19, 2022);

5

Merch Traffic, LLC v. Does, 620 F. Supp. 3d 644, 647 (W.D. Ky. 2022); cf. Vuitton, 945 F.2d at 576.  Such an order will today issue.

## II. Injunction

As noted, in addition to the seizure order, the Plaintiff also seeks an injunction.[7]  The injunction would "temporarily restrain[]" the Defendants from "selling, distributing, and manufacturing" the trademark-infringing merchandise.  Plaintiff's Proposed Order at 3.  It would also restrain "all persons . . . acting in concert with the[] [Defendants]" on these tasks.  Id.

The federal courts are vested with discretion as to whether to issue an injunction.  That is true in general.[8]  And it is true here.[9]

The question, then: should the Court exercise its discretion to enjoin from "selling, distributing, and manufacturing" the infringing merchandise (a) "all persons[] . . . acting in concert" with the Defendants and (b) the Defendants themselves?

### A. "All Persons"

As to the "all persons" inquiry, start with the Federal Rules of Civil Procedure, under which "every restraining order must state its terms specifically" and "describe in reasonable detail . . . the act or acts restrained or required."  Fed. R. Civ. P. 65(d)(1)(B) & (C).

These requirements are not mere technicalities.  They

---

[7] A reminder: for simplicity's sake, see footnote one, the Plaintiff's request for a temporary restraining order is referred to here as a request for an injunction.

[8] See, e.g., eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388 (2006); Weinberger v. Romero-Barcelo, 456 U.S. 305, 312-14 (1982); Lemon v. Kurtzman, 411 U.S. 192, 200 (1973); Gen. Instrument Corp. of Del. v. Nu-Tek Elecs. & Mfg., Inc., 197 F.3d 83, 90 (3d Cir. 1999); Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2948 at 117-119, 294 (3d ed. 2013).

[9] See 15 U.S.C. § 1116(a) (federal courts may issue trademark injunctions "according to the principles of equity and upon such terms as the court may deem reasonable").

> relate to the court's awesome civil and criminal contempt powers. Persons may not be placed at risk of contempt unless they have been given specific notice of the norm to which they must pattern their conduct.

Hope v. Warden York Cnty. Prison, 972 F.3d 310, 322 (3d Cir. 2020) (cleaned up); accord, e.g., Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Loc. No. 70 of Alameda Cnty., 415 U.S. 423, 444 (1974).

Here, this "specific notice" requirement is not met.

To see why, start with the example of a bootlegger carrying trademark-infringing rings and necklaces in her backpack, who hails a taxi to get to a show where she plans to sell the jewelry. Assuming he knows nothing about what is in the backpack, is the taxi driver acting "in concert" with the bootlegger on "distributing" the jewelry?

Or take a cashier who rings up a sale of a dozen plain black T-shirts, not knowing they will eventually be printed with a trademarked logo. Is the cashier working "in concert" with the bootlegger on "manufacturing" the shirts?

If asked, most people would say: no and no. But this would largely be a matter of gut feel, not of any constraining language that can be pointed to in the Plaintiff's proposed injunction. The language of the proposed injunction does not come close to suggesting any particular answer to the questions set out above.[10] And those questions are fundamental, and obviously so. It is not enough that the taxi driver and cashier are (probably) protected on the back end, by intuitions about the meaning of the injunction. The law requires they be protected on the front end, too --- by an injunction that is drawn to the standard of "specific notice," Hope, 972 F.3d at 322, and that is not materially marked by "uncertainty and confusion." Ideal Toy Corp. v. Plawner Toy Mfg. Corp., 685 F.2d 78, 83-84 (3d Cir. 1982).[11]

---

[10] Cf. Robinson v. Coopwood, 292 F. Supp. 926, 934 (N.D. Miss. 1968) (describing some problems caused by "[l]oose injunctive orders").

[11] Other cases: Granny Goose Foods, 415 U.S. at 444 (injunctions must be "fram[ed]" so that "those who must obey them will know what the court intends to require and what it means to forbid"); Schmidt v. Lessard, 414 U.S. 473, 476 (1974) ("specificity" is

7

Here, lack of "specific notice" is no abstract concern. The proposed injunction envisions that it will be enforced by lay people. See Plaintiff's Proposed Order at 5. And a lay person charged with enforcing the proposed injunction could easily conclude the taxi driver is violating the injunction's "acting in concert" language[12] --- and that the driver is therefore violating federal law. That could lead to any number of difficulties for the taxi driver. These would hopefully be cleared up, and quickly.[13] But they might not be, and that "risk" is not for the taxi driver to bear. See Hope, 972 F.3d at 322. It is, rather, a risk for the injunction itself to eliminate, by being precisely crafted to provide "specific notice."

All of this looms large here, because the "risk" that falls on the taxi driver (and others) is especially great.

To see the point, begin by noting the Plaintiff's proposed "all persons" injunction is "nationwide." Memorandum at 22. It would, as drafted, reach people "acting in concert" with the

---

required "to prevent uncertainty and confusion on the part of those faced with injunctive orders," and "[s]ince an injunctive order prohibits conduct under threat of judicial punishment, basic fairness requires that those enjoined receive explicit notice of precisely what conduct is outlawed"). Also: United States v. Article of Drug Designated B-Complex Cholinos Capsules, 362 F.2d 923, 927 (3d Cir. 1966) ("An injunction must be complete and sufficiently specific in itself to instruct an enjoined party as to what acts are prohibited."); Mallet & Co. Inc. v. Lacayo, 16 F.4th 364, 387-89 (3d Cir. 2021).

[12] The reason: on many ears, "acting in concert" will mean "doing something together" --- and the taxi driver and the bootlegger are doing just that when he gives her a ride.

[13] Perhaps by a judge at a contempt proceeding, indicating that "acting in concert," when used in the injunction, should be read as implicitly including a knowledge element. Otherwise, the proposed injunction would pull in a great deal of lawful behavior. And "[a]n injunction must not only meet the specificity requirement set forth in Rule 65(d), it also cannot be broader than necessary to restrain the unlawful conduct." Educ. Testing Servs. v. Katzman, 793 F.2d 533, 545 (3d Cir. 1986), abrogated on other grounds, TD Bank N.A. v. Hill, 928 F.3d 259, 278 (3d Cir. 2019).

8

Defendants anywhere in the United States. Moreover, the injunction envisions an enforcement role for a wide range of people. Among others: "the state police, local police or local deputy sheriffs, off duty officers of the same, and any person acting under their supervision," as located anywhere in the United States. Plaintiff's Proposed Order at 3.

To enforce an injunction, people first need to interpret it. And here, the Plaintiff proposes that there be many (and disparate) injunction-interpreters --- from "state police" in California, to people "supervis[ed]" by off duty local deputy sheriffs in Maine.

Where (as here) the injunction's starting point is loose language, many interpreters (as here) means many different interpretations. And many different interpretations multiplies the chances for "uncertainty and confusion," Ideal Toy Corp., 685 F.2d at 83-84, along with the "risk," Hope, 972 F.3d at 322, that the injunction will be misunderstood in ways that sweep in people it should not.

In this case, the problem is especially pointed. The proposed injunction seeks to reach a set of unnamed people ("all persons"), to be identified by their relationship ("acting in concert") with another set of people --- who are themselves unnamed (the defendants: 100 John Does, 100 Jane Does, and an "XYZ" company). In short: the proposed injunction purports to reach unnamed people based on their connection to other unnamed people. This doubled-up anonymity is potentially a "specific notice" problem all its own. And it means that big-picture context cannot come to the rescue, to clarify the meaning of the proposed injunction's too-loose language. Unnamed piled on unnamed makes it hard for anyone to step back and say --- ahh, now I have a sense of who was meant to be covered. And this adds to the "risk" the taxi driver and the cashier (and many others) would bear. See Hope, 972 F.3d at 322.

In short, the Court will not exercise its discretion to issue an injunction that would reach "all persons" "acting in concert" with the Defendants. On its own, the language of this part of the proposed injunction is too imprecise and too broad to provide the required "specific notice." And in practice, things are even less clear. Because of the number of people, coast-to-coast, who could be called on to interpret the proposed injunction. And because no one is named in the proposed injunction --- not the Defendants; and not "all [the] persons" who would be reached by the injunction for working with the Defendants.

9

### B. The Defendants

The Plaintiff also seeks to enjoin the Defendants themselves from "selling, distributing, and manufacturing" the trademark-infringing merchandise. Memorandum at 4.

But why? As noted above, the Plaintiff has shown the Defendants are virtually impossible to serve, and anyway would not abide by any injunction that might somehow be served on them. (Indeed, had the Plaintiff not made this showing, their other request, for the ex parte seizure order, could not have been granted. See Lorillard Tobacco, Co., 377 F.3d at 320; 15 U.S.C. 1116(d)(4)(B)(i)). So what, then, is the point of an injunction here?

From one of the Plaintiff's declarations:

> [W]e believe these Defendants would dispose of or destroy any Infringing Material or related documents should legal proceedings be commenced against them. . . . Accordingly, Plaintiff seeks to curtail the Bootlegging activities of the Defendants by seeking the assistance of this honorable Court to obtain an order allowing the seizure of Infringing [Materials].

Second Holt Declaration ¶ 17.

The gist: an injunction will not work (because the Defendants will destroy the evidence when the injunction is served and they learn that "legal proceedings [have] be[en] commenced against them"), so it makes sense to seek an ex parte "order allowing the seizure of Infringing Materials[.]"

This is logical. And this is the logic of the statute at issue in this case. See Lorillard Tobacco, Co., 377 F.3d at 320 (construing 15 U.S.C. 1116(d)(4)(B)(i)). But if the Plaintiff is saying an injunction will not work --- why ask the Court to issue one?

From another part of the Plaintiff's declarations:

> I believe the difficulties in identifying the Defendants, including that they have no fixed place of business and no assignable assets, makes them virtually immune to normal process or to any process except by way of restraining order . . . to allow the seizure of the Infringing Merchandise[.]

10

First Holt Declaration ¶ 19.

If no one can find the Defendants (because "they have no fixed place of business") then they are "immune to normal process" (because there is no way to serve them with an injunction) --- and the only way forward is an ex parte seizure order (a "restraining order against persons unknown to allow . . . seizure").[14]

Again: makes sense. And again: without this, an ex parte seizure order could not have issued under the relevant statute. See Lorillard Tobacco, Co., 377 F.3d at 320 (construing 15 U.S.C. 1116(d)(4)(B)(i)). But if so, what is the point here of an injunction?

The answer: probably nothing. The Plaintiff's papers enumerate more than 80 instances in which they have obtained orders from federal judges around the United States. See Burns Certificate at 5-11. These are almost all unpublished. But it appears highly likely the Plaintiff very frequently obtained both seizure orders and injunctive relief. See id. ¶ 5; see also id., Exhibits A-C. But while there is extensive reference in the Plaintiff's papers to the utility in other cases of seizure orders, there is nothing meaningful about the utility in other cases of injunctions.

That silence is telling. But it is not surprising. As noted, the main thrust of the Plaintiff's argument is that ex parte orders are needed because injunctions are all-but useless against concert bootleggers.

Another part of the Plaintiff's declarations, explaining how things have generally gone in their multi-year efforts against bootleggers:

> The people who serve the orders . . . consist predominantly

---

[14] Examples could be multiplied. For example, the Second Holt Declaration, at paragraphs 5-8, explains the many steps that could theoretically be taken to identify the Defendants --- and why none of them would work. But if the Defendants cannot be identified to be served, then an injunction is pointless against them. And this, as noted, is precisely why the Plaintiff seeks an ex parte seizure order. From the final paragraph of the Second Holt Declaration: "If we could identify these Defendant Bootleggers . . . we would. . . . But they evade identification before and during the concerts, causing us to have to apply for these seizure orders."

> of off-duty law enforcement officers. . . . Their
> objectives are: to serve the restraining and seizing order
> documents; to seize and preserve the evidence (the
> Infringing Merchandise); to ask for Defendant Bootleggers
> to provide contact information (which they rarely provide);
> and to provide a receipt, then move onto the next Defendant
> Bootlegger.

First Holt Declaration ¶ 18.

But if these are "the[] objectives,"[15] then note that they are accomplished by a seizure order. Indeed, that is what is being described: the "people who serve the orders" make on-the-spot seizures --- as ex parte seizure orders allow, but as the Plaintiff's proposed injunction would not.

It is the seizure order that does the work, not an injunction:

> The Defendant Bootleggers often respond that they want to
> see our "injunction" or "order" or "papers" or else they
> will not stop their unlawful activities. From the nature
> and context of their statements, it is obvious that they
> are referring to the seizure order that we seek from this
> Court.

First Holt Declaration ¶ 12.[16]

In short: the Court will not exercise its discretion to issue an injunction that runs against the Defendants. The Plaintiff has argued in sworn declarations that an injunction is virtually useless here --- which is how the Court can issue the ex parte seizure order the Plaintiff asked for. And the evidence affirmatively shows that an injunction is, here, not meaningfully useful. The Plaintiff's self-described "objectives" are not advanced by an injunction (which the Plaintiff cannot make use of), but by an ex parte seizure order (which the Plaintiff routinely does make use of). Especially once a seizure order has been entered, as the Court today will

---

[15] Accord Second Holt Declaration ¶ 9 ("our main objective is to get the infringing merchandise").

[16] To similar effect is paragraph 8 of the Second Holt Declaration, which explains that bootleggers "won't stop unless we are able to seize their infringing merchandise," which is what the ex parte seizure order allows, not what the Plaintiff's proposed injunction would reach.

do, there is nothing to suggest an injunction against the Defendants would provide any extra dollop of real-life use. It is a bedrock legal principle that an injunction should not afford more relief than is necessary.[17] And an injunction that would afford no practical relief goes beyond what is necessary, by definition.

* * *

The Court grants the application for a seizure order, denies the application for a temporary restraining order, and will, today, issue an order consistent with the above.

Date: August 4, 2023

_____
Michael E. Farbiarz, U.S.D.J.

---

[17] See, e.g., Meyer v. CUNA Mut. Ins. Soc., 648 F.3d 154, 170 (3d Cir. 2011); see also, e.g., Madsen v. Women's Health Ctr., Inc., 512 U.S. 753, 765 (1994); Califano v. Yamasaki, 442 U.S. 682, 702 (1979); Dayton Bd. of Educ. v. Brinkman, 433 U.S. 406, 418-20 (1977).